IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **UNIVERSITY OF MISSISSIPPI MEDICAL CENTER** | **PLAINTIFF** |
| V. | CAUSE NO. 3:19-CV-459-CWR-LGI |
| **SPENCER K. SULLIVAN, M.D.; MISSISSIPPI CENTER FOR ADVANCED MEDICINE, P.C.; LINNEA MCMILLAN; KATHRYN SUE STEVENS** | **DEFENDANTS** |

**ORDER**

Before the Court is Plaintiff University of Mississippi Medical Center's (UMMC) motion for default judgment. The motion is fully briefed and ready for adjudication. On review, the motion will be granted.

**I.    Factual and Procedural History**

This case began as a trade secrets dispute. But Defendants conscripted their counsel into a role that no attorney wants to perform: safeguarding our judicial system against their clients' deceit, deception, and dishonesty. Despite counsels' best efforts to provide a defense to the trade secret dispute, their clients have made that task impossible.

UMMC hired Defendant Dr. Spencer Sullivan in July 2014 to head its Hemophilia Treatment Center (HTC). Docket No. 181 at 3. As a condition of his employment, Dr. Sullivan agreed to refrain from taking or using patient information for his own benefit, including to solicit patients for his own independent practice. Docket No. 1-3 at 9, 12-13. In January 2016, after gaining access to UMMC's confidential financial information, Dr. Sullivan contacted his lawyer and arranged to start his own for-profit hemophilia clinic and pharmacy. Docket No. 181 at 4. He

incorporated this business as the Mississippi Center for Advanced Medicine, P.C. (MCAM). Docket No. 1-25 at 23-39.

Over the course of the next few months, Dr. Sullivan coordinated with other UMMC staff—for present purposes, Linnea McMillan and Kathryn Sue Stevens—to prepare for MCAM's opening. This included compiling UMMC patient records. Docket No. 181 at 4. While still employed at UMMC, Defendants organized a spreadsheet containing patient information, such as their birthdate, diagnosis, prescriptions, dose and frequency, insurance, pharmacy and home and mobile telephone numbers, which they referred to as "the List." *Id.* at 1, 4. When Dr. Sullivan left UMMC on June 30, 2016, UMMC alleges that he left armed with this classified patient information, in violation of his employment agreement. *Id.* at 5. The use of this information, UMMC contends, enabled Dr. Sullivan to generate "$5 million of gross revenue from dispensing factor, of which Dr. Sullivan reported more than $1.1 million as personal income." *Id*; *see also* Docket No. 180-7.

UMMC initially filed suit in Hinds County Circuit Court alleging state law claims against Dr. Sullivan on July 14, 2017. Docket No. 180-9. Over the course of the state lawsuit, Dr. Sullivan and other MCAM employees, including McMillan and Stevens, continually denied taking or using the List or other patient information from UMMC. Docket No. 181 at 6-12.

Then, in June 2018, the *Clarion-Ledger* published an article about the alleged theft of patient information from UMMC. *Id.* at 5.

The article sparked a major shift in the litigation. Upon reading the account, Defendant Linnea McMillan's ex-husband, Aubrey McMillan, contacted UMMC's counsel to notify them that he had obtained a list from his ex-wife's car that resembled the List described in the article. *Id.* at 5-6. UMMC confirmed that it was the List. *Id.* at 6.

UMMC filed the present federal lawsuit on June 28, 2019, alleging claims under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2) and (a)(4), and the Federal Trade Secrets Act, 18 U.S.C. §§ 1832(a)(5), 1836, and 1839. Docket No. 1.

Initially, even when faced with the copy of the List recouped from McMillan's ex-husband, Defendants denied taking, possessing, or using it. Docket No. 181 at 6. That changed in March 2020. Then, Defendant Rachel Harris "hired her own independent counsel, and produced 1,469 pages of previously unproduced text messages." *Id.* at 14.[1] These messages directly contradicted the Defendants' prior testimony. *Id.* This prompted UMMC to submit a request for admission to Harris, to which she "admitted that she, Stevens, McMillan, and Dr. Sullivan all possessed and used the UMMC Patient List at MCAM, and that she lied in her deposition." *Id.* at 15.

UMMC filed a motion for default judgment against all remaining Defendants on March 12, 2021. Docket No. 180. It contends that McMillan, Stevens, and Dr. Sullivan committed perjury. Docket No. 181 at 20-23. UMMC further alleges that Defendants engaged in spoliation of evidence by destroying the list of patients ("the List") and other patient records that Defendants allegedly stole from UMMC. *Id.* at 23-27. UMMC emphasizes that in response to requests for production in this federal lawsuit, Defendants falsely claimed that no patient List or other patient records from UMMC existed. Docket No. 181 at 14. This, UMMC claims, amounted to concealment of evidence. Consequently, UMMC requests that this Court exercise its inherent power and impose a default judgment against each of the Defendants.

Defendants counter that the perjury and discovery responses at issue took place in the state, not the federal, case. Docket No. 189 at 17-27. Far from untruthful, Defendants emphasize, "their first testimony in this Court was to admit wrongdoing." *Id.* at 33. Defendants further characterize

---

[1] Pursuant to a joint motion by the parties, this Court dismissed with prejudice all claims against Defendant Rachel Henderson Harris on June 22, 2020. Docket No. 94.

3

the recent supplementation of their earlier responses to discovery requests as action undertaken "out of an abundance of caution," "not evidence of a conspiracy." *Id.* at 20. Finally, Defendants claim that Dr. Sullivan "objected [to the previous discovery requests] as being vague regarding the scope, intent, and meaning of the request." *Id.* at 21. This, Defendants imply, did not amount to concealment of evidence. *Id.* Accordingly, Defendants conclude that none of them qualify for sanctions. *Id.* at 33. Defendants alternatively request a hearing on sanctions, as well as individualized assessment and imposition of sanctions. *Id.* at 32-33.

Additional briefing followed. On July 22, 2021, UMMC sought leave to file a supplemental brief and exhibits in support of its motion for default judgment. Docket No. 232. The supplemental briefing concerns Dr. Sullivan's admission that he possessed two external hard drives containing information taken from UMMC. Docket No. 232-6 at 2. Defendants did not oppose UMMC's motion. Docket No. 237.[2] Specifically, on April 26, 2021, Dr. Sullivan, through his counsel, contacted the Magistrate Judge to arrange for production of "a hard drive and a thumb drive" in response to the Magistrate Court's Judge's April 21, 2021 Order. Docket No. 208-2. Dr. Sullivan's admission contradicted his prior testimony and interrogatory responses. Docket No. 234-4 at 179-80, 650. In connection with this admission, on August 26, 2021, Dr. Sullivan submitted errata correcting his deposition testimony of April 14 and 15, 2021. Docket No. 232-6. There, Dr. Sullivan admitted to retaining a hard drive containing files and emails from UMMC. *Id.*

---

[2] By this time counsel for Defendants must have been more than frustrated and irritated with their clients. At every turn they had to confront their clients' untruths, misrepresentations, and distortions. Apparently, in fulfilling their duty of candor to the Court, they did not attempt to block the Plaintiff's from presenting this information to the Court—safeguarding the judicial process.

4

## II.     Legal Standard

A federal court possesses inherent power to sanction bad-faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). This includes the power to impose a default judgment. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).

Under Fifth Circuit precedent, "such sanctions should be confined to instances of 'bad faith or willful abuse of the judicial process.'" *Id.* Behavior "that deliberately subverts a court's administration of a case" amounts to "bad faith and willful abuse." *Rogers v. Medline Industries, Inc.*, No. 1:17-CV-118-HSO-JCG, 2018 WL 6683015, at *2 (S.D. Miss. 2018); *see also Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76-80 (5th Cir. 2011). Imposition of a default judgment "is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct." *Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) (discussing the analogous sanctions of dismissal with prejudice and award of attorney's fees). A court may properly exercise its inherent authority to issue sanctions when a party engages in a "wide range of willful conduct observed by the district court." *Woodson*, 57 F.3d at 1418.

## III.    Discussion

### A.    Perjury

Perjury is "false testimony concerning a material matter" delivered by a witness testifying under oath "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). UMMC alleges that Defendants committed perjury by testifying falsely during sworn depositions and knowingly submitting false responses to interrogatories. Docket No. 181 at 16-23.

Defendants admit that McMillan and Stevens lied in their prior depositions. Docket No. 189 at 13. They seek to justify this conduct, though, on the grounds that McMillan and Stevens "provided false testimony in the state action and failed to produce texts in this action in order to cover for their friend, Rachel Harris." *Id.*

The Court is unpersuaded by these justifications.[3]

"The proper administration of justice depends on people testifying truthfully under oath." *Brown*, 664 F.3d at 77 (citation and quotation omitted). False sworn testimony in one action can amount to perjury in another, related action. *Id.* at 78. Friendship, even if sincere, does not excuse this duty. Thus, Defendants' justification for McMillan and Stevens' untruthfulness is unavailing.

Dr. Sullivan committed perjury, too. He falsely and repeatedly claimed that he did not possess an external hard drive containing information from UMMC. Docket Nos. 181-33; 232-4 at 650. In fact, he had two such devices. Docket No. 208-3. Dr. Sullivan's dishonesty before this Court does not boil down to, as Defendants' put it, "one particular interrogatory response." Docket No. 189 at 33. Rather, his behavior amounts to a pattern of calculated evasion. The conduct is similar to that seen in *Brown*, where the court affirmed a dismissal with prejudice against Brown upon finding that he "deceitfully provided conflicting testimony in order to further his own

---

[3] Perjury is a crime under both applicable State and federal law. *See* Miss. Code Ann. § 97-9-59 (2019) and 18 U.S.C. § 1621. Whether criminal charges will be pursued is left to the discretion of prosecutors. This Court has little tolerance for those who subvert the judicial process through perjured testimony. *See, e.g.*, *Grainger v. Meritan, Inc.*, No. 3:09-CV-271-CWR-FKB, 2011 WL 824484, at *4-5 (S.D. Miss. March 2, 2011) (applying judicial estoppel to claims brought in federal court where party failed to disclose them as asset in prior bankruptcy, in part, because plaintiff had certified under penalty of perjury that information provided in bankruptcy petition was true and correct); *Taylor v. Consolidated Pipe & Supply Co., Inc.*, No. 3:15-CV-585-CWR-FKB, 2017 WL 3090317, at *4 (S.D. Miss. July 20, 2017) (imposing harshest sanction of dismissing plaintiff's case where plaintiff presented perjured testimony); and *Lyon v. Wise Carter Child & Caraway PA*, No. 3:13-CV-913-CWR-MTP [Docket No. 515] (S.D. Miss. Aug. 21, 2014) (imposing sanctions and finding plaintiff in contempt, in part, because he made baseless and scurrilous allegations and accusations under penalty of perjury); *see also Stewart v. Belhaven Univ.*, No. 3:16-CV-744-CWR-LRA, 2017 WL 3995989, at 3 n.5 (S.D. Miss. Sept. 8, 2017) (identifying several instances where this Court has imposed a variety of sanctions because of its belief that courts "have a duty to protect [the] process").

pecuniary interests in the two lawsuits and, in so doing, undermined the integrity of the judicial process." *Brown*, 664 F.3d at 78.

For these reasons, the record amply demonstrates that Stevens, McMillan, and Dr. Sullivan committed perjury.

### B. Spoliation and Concealment of Evidence

Spoliation refers to the bad faith destruction of relevant evidence. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). A party's duty to preserve evidence typically applies only "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Id.* "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Id.*

At her June 9, 2020 deposition, Stevens admitted that destroying patient information was contrary to MCAM policy. Docket No. 180-29 at 189. Yet, text messages demonstrate that Harris, Stevens, and McMillan conspired to shred the List in contravention of this policy. Docket No. 180-26.

The parties then skirmish over when exactly the documents were destroyed.[4] Under any reading of the facts, however, Defendants destroyed documents while on notice that an investigating party—be it the Board or UMMC itself—sought them. Either inquiry was sufficient to impose upon Defendants a duty to preserve the relevant documents. *See Guzman*, 804 F.3d at

---

[4] During her June 9, 2020 deposition, Stevens indicated that she believed that the List and related UMMC patient documents were shredded after the Board of Medical Licensure called in September 2016. Docket No. 180-29 at 63. McMillan, however, offered contradictory testimony during her June 11, 2020 deposition. There, McMillan represented that Defendants did not shred the documents immediately after the 2016 text exchange, but instead destroyed them prior to MCAM moving to a new location, sometime around late-2017 or early-2018. Docket No. 180-28 at 70. Dr. Sullivan attested in his July 29, 2020 responses to UMMC's second set of interrogatories that he was aware of McMillan's testimony that the documents from UMMC were shredded "in the fall of 2017 through early 2018." Docket No. 180-33 at 3.

7

713; *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612-13 (S.D. Tex. 2010). They did not.

In either event, Defendants destroyed documents from UMMC while on notice that an investigating party sought them. The notice imposed on Defendants a duty to preserve the relevant documents. Defendants violated this duty. They shredded UMMC patient files. This constitutes spoliation.

Dr. Sullivan also deliberately concealed evidence from this Court. In prior testimony and responses to interrogatories, Dr. Sullivan claimed that he did not remember what he did with the hard drive. *See* Docket No. 234-4 at 179-80, 650. Yet, on April 26, 2021, Dr. Sullivan's counsel notified the Magistrate Judge that Dr. Sullivan possessed two external hard drives with information from UMMC. Docket No. 232-6 at 2. In the errata correcting his April 2021 deposition testimony, Dr. Sullivan admitted that he "kept [the hard drive]." *Id.* By way of explanation, Dr. Sullivan wrote simply, in parenthesis, "embarrassed." *Id.* By his own admission, embarrassment—not a mistake or lapse in memory—motivated Dr. Sullivan's false testimony. This willful false statement amounts to concealment. *See Rimkus*, 688 F. Supp. 2d at 607 (discussing "efforts to conceal or delay revealing" relevant emails as part of a spoliation analysis). Consequently, Dr. Sullivan's failure to produce the hard drives, and his compounding lies, subject him to the Court's inherent power to impose sanctions. *See Degen v. United States*, 517 U.S. 820, 827 (1996) (underscoring the Court's inherent authority to enforce its orders, including discovery orders).

Defendants then argue that "MCAM has not done anything directly before this Court for which it could be sanctioned." Docket No. 189 at 12. Not so. MCAM, too, denied possession or use of documents, information, or tangible objects obtained or taken by the organization or those acting on its behalf in a request for production issued in the state action. *See* Docket No. 180-22.

8

UMMC submitted this response into the record of the present federal case. *Id.* And, like the natural persons named as Defendants, MCAM failed to correct, for this Court, the false statements therein contained.

More than that, MCAM affirmatively represented that:

> [I]t did not purposefully take any documents or data from UMMC, it did not direct anyone to take any documents or data from UMMC, and it did not know of anyone acting at its direction or with its knowledge who took any documents or data from UMMC, and therefore, if that is the question posed in this request it has no responsive documents.

Docket No. 180-22 at 3-4. This was false. The record indicates that by September 2019, the date of MCAM's response, Defendants had taken and used the UMMC patient records, including the List, at MCAM. *See* Docket No. 180-28 at 8-9; Docket No. 180-29 at 11-12, 28, 93-94; Docket No. 30. Further, Dr. Sullivan is the sole director and shareholder of MCAM. Docket No. 180-3. Since Dr. Sullivan knowingly used the patient information stolen from UMMC at MCAM, it follows that MCAM also knew of the Defendants taking and using data from UMMC. And these actions by MCAM's employees fell squarely within their scope of employment, as they directly benefitted the professional corporation. *See Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 488 (Miss. 2010). Consequently, MCAM's conduct also warrants sanctions.

Defendants' destruction and concealment of documents and hard drives—evidence central to UMMC's federal claims—appear motivated by a desire to evade investigation. Practically, it undermined UMMC's discovery process. It also stymied the administration of justice. This meets the definition of spoliation.

9

C. **Default Judgment**

In determining whether to grant a default judgment, the key inquiry is whether Defendants' misconduct amounted to bad faith or willful abuse of the judicial process. *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014).

UMMC moves for a default judgment due to Defendants' repeated and willful bad faith conduct before this Court. This conduct, UMMC alleges, includes perjury by each of the named individual Defendants and spoliation of evidence, including the destruction and concealment of relevant evidence. Docket No. 181 at 17-25. Based on the "coordinated pattern of deception involving perjury, spoliation, and concealment of evidence," UMMC contends that default judgment is the only appropriate sanction. *Id.* at 25.

This Court agrees.

*TLS Management* is instructive. *See TLS Management & Marketing Services, LLC v. Mardis Financial Services, Inc.*, No. 3:14-CV-881-CWR-LRA, 2018 WL 3673090 (S.D. Miss. Jan. 29, 2018). There, this Court issued a default judgment against defendants who destroyed, and then before this Court lied and denied destroying, data essential to the plaintiff's claim. *Id.* at *3-*7. In so ruling, this Court emphasized that Defendant's conduct constituted "an assault on this Court's ability to find truth, to do justice." *Id.*

Defendants attempt to distinguish the present case from *TLS*. They stress that in contrast to *TLS*, here, "UMMC knows, and has always known, the exact content of the information taken by the Defendants." Docket No. 189 at 31. Further, Defendants argue that unlike in *TLS*, "any destruction that occurred was not the result of a nefarious motive." *Id.* at 32.

On review, however, the Court does not see the cases so differently. The present record indicates that Defendants actively conspired to destroy the List and other patient files obtained

10

from UMMC to avoid detection by the Medical Licensing Board, and later, by UMMC. *See* Docket Nos. 79-7 at 6-7; 180-29 at 179; 180-33 at 4. Defendants willfully destroyed evidence to impede lawful investigations and evade the consequences of their actions. The Court cannot condone such conduct.

Defendants also contend that because many of the events at issue occurred in the state, not the federal, case, default judgment is inappropriate. Docket No. 189 at 1-2. Further, Defendants emphasize that, "the discovery violations that purportedly occurred in this [federal] forum are limited and have largely been addressed through revised discovery responses." *Id.* at 2. These arguments are unpersuasive. Defendants vouched for the veracity of their responses in the state action by listing them in a memorandum before this Court. *See* Docket No. 24 at 3-4. These filings were replete with falsehoods. Such conduct "undermine[s] the integrity of the judicial process." *Brown*, 664 F.3d at 78. It is sanctionable.

The Court is particularly concerned by Dr. Sullivan's failure to admit to possession of even one, let alone both, of the hard drives containing UMMC data until almost two years after the filing of this federal lawsuit. This, despite UMMC's multiple requests for production, interrogatories, and depositions. These data are central to UMMC's claims. Thus, Dr. Sullivan's initial omission and belated production of the hard drives is unacceptable.

And, contrary to Defendants' protestations, UMMC did suffer prejudice due to Defendants' untruthfulness. At every turn, Defendants' persistent lies under oath, willful destruction of evidence, and obstinate withholding of evidence thwarted UMMC's discovery efforts. This pattern of evasion unnecessarily drove up the expense of litigation, both in time and in money, for UMMC.

Once caught, Defendants showed little remorse. In her June 11, 2020 deposition, McMillan admitted that she took no steps on her own to correct her prior untruthful testimony. Docket No.

11

180-28 at 174-75. When asked about her conduct involving the List and solicitation of patients for the MCAM, Ms. Stevens responded with "I don't recall," and other evasive answers. Docket No. 180-29 at 62-63, 96-103, 160, 182. Dr. Sullivan apparently only came forward with the hard drives when the Magistrate Judge forced him to choose between producing the hard drives or his computer. *See* Docket Nos. 194 at 9; 232-1 at 8. None issued an apology, only paltry explanations.

Perhaps most troubling, Dr. Sullivan committed his latest instance of perjury, wherein he denied possession of a hard drive with data from UMMC, during his April 2021 deposition testimony—a month *after* UMMC filed its motion for default judgment. *See* Docket No. 232-1 at 7. At that time, Dr. Sullivan was on notice that he faced serious sanctions for continued dishonesty. Yet he lied anyway. UMMC argues that Dr. Sullivan's behavior demonstrates that he "has no respect whatsoever for this Court or the administration of justice, and that he has no fear whatsoever of the consequences of lying under oath or concealing evidence." Docket No. 232-1 at 7.

Upon reviewing the record, this Court agrees.

Default judgment is "a foreseeable, just and appropriate response" to the Defendants' repeated, egregious, and fraudulent conduct throughout this case. *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1121 (5th Cir. 1970). Pecuniary sanctions, such as "covering the cost of their deposition in federal court to explain their false testimony in state court," are too meager to account for Defendants' persistent deception. Docket No. 189 at 33. Rather, Defendants' lies and evasions, particularly Dr. Sullivan's recent conduct in relation to the long-sought hard drives, suggest that nothing less than the full exercise of this Court's inherent power will command the Defendants' respect for the judicial process, or secure their commitment to telling this Court the truth. "[A]ny

lesser sanction would not achieve the requisite deterrent effect." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758-59 (5th Cir. 2019).

Defendants then argue "that due process guarantees to each [Defendant], individually, a hearing before the Court imposes any type of sanctions." Docket No. 189 at 32. They also submit that "the clear and convincing evidence standard should apply to any use of the Court's inherent power." *Id.*

Due process does not necessarily require a hearing. In the context of Rule 11 sanctions, for example, the Fifth Circuit has held that "[t]he requirement of an opportunity to be heard . . . does not require an elaborate or formal hearing." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). Instead, "submission of a brief is usually all that due process requires." *Id.* Further, the Supreme Court has recognized that the law allows the finder of fact to attach presumptions to a party's failure to produce requested material. *Hammond Packing Co. v. State of Ark.*, 212 U.S. 322,351 (1909).

Based on this record, which is rife with evidence of a pattern of lies and evasion, this Court can draw sufficient inferences to conclude that Defendants' conduct amounted to bad faith and willful abuse of judicial administration. Imposing a default judgment on this basis does not offend due process.

Each Defendant—repeatedly and shamelessly—lied. Accordingly, this Court declines Defendants' invitation to impose lesser, individualized sanctions on any of the Defendants. Docket No. 189 at 33. Together, each Defendant exacerbated and prolonged the fraud perpetrated upon this Court. They each deserve the same sanction.

The Fifth Circuit may affirm a district court's "decision to invoke its inherent sanctioning power only if clear and convincing evidence supports the court's finding of bad faith or willful

abuse of the judicial process." *In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014). Such evidence exists here. As discussed above, a review of the voluminous record in this case reveals a clear, persistent pattern of perjury, evidence destruction, and concealment. The Court will therefore issue a default judgment. This egregious conduct and lethal attack on our judicial process demand no less.

**IV.     Conclusion**

UMMC's motion for default judgment against all Defendants is granted. The pretrial conference will take place on January 8, 2021 at 9:00 AM, and a trial on damages will take place at the date and time previously set for jury trial, February 16, 2021 at 9:00 AM.

**SO ORDERED**, this the 8th day of October, 2021.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
