IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER | PLAINTIFF |
| V. | CAUSE NO. 3:19-CV-459-CWR-LGI |
| SPENCER K. SULLIVAN; MISSISSIPPI CENTER FOR ADVANCED MEDICINE, P.C.; LINNEA McMILLAN; KATHRYN SUE STEVENS | DEFENDANTS |

**ORDER**

Before the Court are the defendants' motion to strike the University of Mississippi Medical Center (UMMC)'s rebuttal experts as well as the parties' cross-motions to exclude expert testimony from trial. Docket Nos. 202, 295, 297, 299, and 301. The matters are fully briefed and ready for adjudication.

**I.    Factual and Procedural History**

The facts of this case are well-known to the parties. For the purposes of the present set of motions, a brief recitation of the relevant factual and procedural history will suffice.

This case is a trade secrets dispute arising under the Defend Trade Secrets Act (DTSA). UMMC alleges that the defendants misappropriated trade secrets by stealing patient information, and then used this stolen information to build the hemophilia clinic at Mississippi Center for Advanced Medicine, P.C. (MCAM) and enrich themselves. Defendants dispute this account.

On June 1, 2021, the defendants filed a motion to strike the expert reports of three of UMMC's rebuttal expert witnesses: Jennifer D. Oliva, J.D.; Haavi Morreim, Ph.D., J.D.; and Mary B. Taylor, M.D., M.S.C.I. *See* Docket No. 202. UMMC retained these experts, the defendants contended, to counter the testimony of the defendants' experts regarding medical ethics in the

treatment of blood disorder patients, including the management of patient information. The defendants argued that UMMC improperly and untimely designated their rebuttal expert witnesses.

UMMC contested this account. Arguing that the defendants' "new medical ethics defense stands in stark contrast to the legal positions Defendants have taken throughout the litigation," UMMC stated that its rebuttal experts were essential to "facilitate a fair contest" and respond to the defendants' "new defense." Docket No. 223 at 1-2. Adopting the defendants' interpretation, UMMC argued, "incorrectly assume[s] that UMMC has the burden to disprove an affirmative defense during its case-in-chief." *Id.* at 6.

Additional conflicts arose. Following a series of discovery disputes, UMMC filed a motion for default judgment. The Court, finding that the defendants committed perjury, provided false discovery responses, concealed and destroyed evidence, granted the motion on October 8, 2021. Defendants then filed separate motions to set aside the default judgment. The Court denied these motions earlier today. *See* Docket No. 331. The default judgment established the liability of the parties. Thus, the only element remaining for trial is the amount of damages.

Following the Court's entry of default judgment, the parties filed several motions to exclude experts. Specifically, UMMC sought to prevent Joshua Lynn and Justin Blok, two Certified Fraud Examiners, from testifying. It also filed a motion to exclude the opinions of Tammuella "Tami" Chrisentery-Singleton (Singleton) and Robert Sidonio, two doctors with experience treating patients with blood disorders, who were tasked with discussing accepted practices of patient care, including management of patient records. On the other side, the defendants filed motions to exclude the testimony of James A. Koerber, an expert UMMC retained to calculate damages owed under a theory of unjust enrichment.

Briefing on these motions concluded on December 14, 2021.

2

## II.     Legal Standard

In relevant part, the Federal Rules of Civil Procedure provide that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). A witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" must provide a written report as part of the witness disclosure. *Id.* at 26(a)(2)(B). With respect to timing, "[a] party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made . . . if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." *Id.* at 26(a)(2)(D)(ii). Our local rules adhere to this procedure, *see* L,U.Civ.R. 26(a)(2), as did the scheduling orders governing this dispute. Docket No. 29, and Text-Only Orders of May 7, 2020, August 31, 2020, November 9, 2020 and June 22, 2021.

Additionally, under Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 . . . is a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

594-95 (1993). Expert testimony must also aid the factfinder in evaluating the evidence. Thus, "[t]he overarching goal of *Daubert*'s gate-keeping requirement . . . 'is to ensure the reliability and relevancy of expert testimony.'" *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92).

### III. Discussion

"A default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019) (citing *United States ex rel. M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). Despite this straightforward precept, the parties disagree on the scope of issues left for trial. Defendants claim that to secure an award of damages, UMMC must demonstrate that defendants' misappropriation was the proximate cause of UMMC's purported financial losses.

UMMC contests this characterization. It argues that the default judgment established the defendants' liability. Further, citing to the parties' joint evidentiary stipulation [Docket No. 278], UMMC contends that "the only remaining question is whether the Defendants' stipulated gross profit . . . should be further reduced by any additional incremental costs, and if so, the identification of those categories of costs and the associated amounts of each." Docket No. 298 at 5.

Outside of the DTSA context, the Fifth Circuit has recognized that "[m]isappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff

4

through the expenditure of labor, skill and money." *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 368 (5th Cir. 2000) (citation omitted). Thus, traditional tort principles, under which proximate cause constitutes a necessary element of proving liability, apply to misappropriation claims. *See* 74 Am. Jur. Torts § 27. A default judgment can establish liability, and by extension, proximate cause. Specifically,

> A default judgment conclusively establishes the defendant's liability that the defendant's conduct proximately caused the event upon which suit is based. But whether the event sued upon caused any injuries to the plaintiff is another matter entirely and is part of proving the amount of damages to which the plaintiff is entitled.

*Russell v. Hall*, No. 3:19-CV-874-S, 2020 WL 9848765 (N.D. Tex. Dec. 4, 2020). "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal citation omitted). In *TLS Mgt. & Mktg. Serv., LLC v. Mardis Fin. Serv., Inc.*, this Court explained as follows: "if a particular claim would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), there is no liability under that claim. Therefore, despite the default judgment, the Court must determine if the [plaintiff's] well pleaded liability-related factual allegations, taken as true, establish liability." No. 3:14-CV-881-CWR-LRA, 2018 WL 3698919, at *1 (S.D. Miss. Aug. 3, 2018). The well-pleaded complaint survives this test.

As a threshold matter, then, the defendants' contention that the default judgment failed to establish proximate causation is misplaced. The above authorities demonstrate that in determining liability, a default judgment necessarily establishes proximate causation.

The defendants' supporting cases do not lead to a contrary result. For instance, the defendants cite to *Global Material Technologies, Inc. v. Dahzeng Metal Fibre Co.* for the proposition that a plaintiff must "'carr[y] its burden of establishing proximate cause' for damages

from trade-secret misappropriation, even after entering a default order on that claim." Docket No. 302 at 10 (citing No. 12 CV 1851, 2018 WL 10321387, at *1, 3 (N.D. Ill. Mar. 2, 2018)). But this reading of the case is incomplete. Though it is true that the district court there recognized that "the defaulting party may raise the issue of causation," it further clarified that such a challenge was limited "only . . . to the calculation of damages and not as it relates to liability." 2018 WL 10321387 at *1. While defendants may challenge the nexus between the misappropriation and UMMC's damages, they must confine such a challenge to the scope of damages, not liability.

*Law Funder v. Munoz* confirms this interpretation. There, the Fifth Circuit discussed proximate causation following entry of a default judgment. *See* 924 F.3d 753, 760-61 (5th Cir. 2019). But it did so while applying Texas law of negligent representation, under which a plaintiff needs to prove that an attorney's conduct proximately caused the plaintiff harm to determine the measure of damages. *Id.* at 761-62. To the extent that UMMC must establish a connection between the defendants' misappropriation of trade secrets, which the default judgment conclusively determined, and the harm it suffered, this relationship impacts the measure of damages alone.

To put it another way: the only remaining issue for trial is the amount of damages. *See TLS Mgt. & Mktg. Serv., LLC v. Mardis Fin. Servs., Inc.*, No. 2:14-CV-881-CWR-LRA, 2018 WL 3673090, at *8 (S.D. Miss. Jan. 29, 2018) (entering a default judgment, and then afterward, setting a trial on damages). Testimony, opinions, and arguments that do not relate to this calculation, including putative justifications for misappropriation, are irrelevant. Because of the defendants' conduct, liability is established. The question is no longer "what happened." Entry and affirmance of the default judgment established what happened—the defendants misappropriated trade secrets from UMMC in violation of the DTSA. Thus, the sole remaining issue is how much harm resulted from defendants' misappropriation.

### A. Singleton and Sidonio's Testimony and the Defendants' Motion to Strike

The Court first considers Singleton and Sidonio's testimony. MCAM retained Singleton and Sidonio, two doctors with experience treating patients with blood disorders, to opine about professional ethics and standard procedures concerning hemophilia patients, including the production, retention, and sharing of patient records.

UMMC moved to exclude Singleton and Sidonio's opinions on the grounds of irrelevancy. It points to Singleton and Sidonio's lack of financial expertise, as neither possesses a background in accounting, economics, or any other field relevant to the calculation of unjust enrichment profits. Thus, UMMC argues, Singleton and Sidonio cannot offer opinions pertinent to the sole remaining issue for the trier-of-fact: the appropriate measure of damages under unjust enrichment theory.

The Court agrees with UMMC. Upon review, Singleton and Sidonio's expected testimony does not directly relate to the sole remaining issue for trial, the scope of damages. Instead, it touches on liability, which the default judgment conclusively established. As such, the Court will grant UMMC's motion to exclude the testimony as irrelevant.

Exclusion of Singleton and Sidonio's testimony also obviates the need for UMMC's rebuttal witnesses. Since Singleton and Sidonio's testimony is excluded, the testimony of UMMC's rebuttal witnesses is no longer relevant to the trier-of-fact. Accordingly, defendants' motion to strike is granted, albeit for the reason discussed above, not those offered by defendants in their memorandum.

### B. Lynn and Blok's Testimony

UMMC argues that Lynn and Blok's opinions are inadmissible "because they are not relevant to the sole remaining issue for trial." [1] Docket No. 296 at 1. Specifically, UMMC raises

---

[1] UMMC clarifies that "Defendants have agreed not to call Justin Blok at the trial of their case;" however, UMMC filed a motion to exclude both Lynn and Blok "because they issued a joint report." Docket No. 296 at 1.

two concerns regarding Lynn and Blok's report. First, UMMC contests Lynn and Blok's deduction of expenses. *Id.* at 7. Second, because Lynn and Blok declined to identify "either categories containing additional expenses to be deducted or the amount of any expenses within any such category that should be deducted in an unjust enrichment analysis," their opinions regarding Koerber's discussion of potential deductions, UMMC claims, are inadmissible. *Id.* at 7-8.

The defendants dispute UMMC's characterization of Lynn and Blok's opinions. They emphasize that "Lynn and Blok were retained as experts in this case to provide expert testimony in the areas of forensic accounting and economic damages calculations." Docket No. 319 at 2. The defendants then stress that "Lynn and Blok were further retained to respond to any reports or testimony by UMMC's experts or lay witnesses." *Id.* at 3. By virtue of "their education, training, experience, and expertise in forensic accounting, valuation of intellectual property, and economic damages calculation," the defendants urge, Lynn and Blok can serve as relevant and helpful expert witnesses to defendants in this case.

The Court finds the defendants' arguments persuasive. In their report, Lynn and Blok clarify that they "have been asked to assume that Plaintiff will prevail on its claims in this case," and consequently assert that they "have not formed any opinions regarding liability in this matter." Docket No. 295-1 at 6. Exhibits pertaining to Lynn and Blok's opinions, such as excerpts from their joint report, adequately substantiate their professional qualifications and methodology to qualify them to offer expert testimony. *See id.*

UMMC may certainly dispute Lynn and Blok's conclusions. But such "a battle of the experts" is appropriately waged at trial before the trier-of-fact, not in a pre-trial motion to exclude. *See Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc.*, 695 F.2d 883, 889 (5th Cir. 1983) (discussing the role of "a classic battle of the experts" to allow the trier-of-fact to rule, as "[i]t was

8

for the jury to decide which of the experts was more credible, which used the more reliable data, and whose opinion—if any—the jury would accept").

### C. Koerber's Testimony

Finally, the Court considers the defendants' motion to exclude Koerber's opinions and testimony. The defendants' contentions boil down to concerns that Koerber's opinions lack a sufficient factual basis. More specifically, the defendants object to Koerber's assumption that defendants' misappropriation of UMMC's trade secrets resulted in damages under a theory of unjust enrichment. *See* Docket No. 302 at 10-16. They further contest the window of time for which Koerber calculates damages, arguing that Koerber erroneously attributes UMMC's putative losses to the defendants' misappropriation even after the defendants could lawfully access the patient information at issue. *Id.* at 16-22.

UMMC refutes defendants' concerns. In relevant part, it stresses that experts routinely assume liability for the purpose of calculating damages. *See* Docket No. 325 at 9. Koerber's opinions, it urges, are founded on legally sufficient facts. *Id.* at 31.

The Court agrees with UMMC. For reasons substantially similar to those offered for the denial of UMMC's motion to exclude Lynn and Blok's opinions, the Court declines to exclude Koerber's opinions.

IV.     **Conclusion**

The motion to strike [Docket No. 202] is granted as stated. UMMC's motions to exclude Singleton and Sidonio's opinions and testimony [Docket Nos. 297 and 299] are granted. The remaining motions to exclude expert testimony and opinions [Docket Nos. 295 and 301] are denied.

**SO ORDERED**, this the 1st day of February, 2022.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE