IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**THE UNIVERSITY OF MISSISSIPPI**     **PLAINTIFF**
**MEDICAL CENTER**

**V.**     **CAUSE NO. 3:19-CV-459-CWR-LGI**

**SPENCER K. SULLIVAN, MD.;**     **DEFENDANTS**
**MISSISSIPPI CENTER FOR ADVANCED**
**MEDICINE, P.C.; LINNEA MCMILLAN;**
**AND KATHRYN SUE STEVENS**

## ORDER

Before the Court are the defendants' motion for summary judgment [Docket No. 303] and motion for leave to reopen discovery for a limited purpose [Docket No. 352]. The matters are fully briefed and ready for adjudication.

**I.**     **Factual and Procedural History**

The background of this case is well-known to the parties. For present purposes, a brief recitation of the factual and procedural history will suffice.

This is a trade secrets dispute arising under the Defend Trade Secrets Act (DTSA). University of Mississippi Medical Center (UMMC) alleges that the defendants misappropriated trade secrets by stealing patient information, and then used this stolen information to build the hemophilia clinic at Mississippi Center for Advanced Medicine, P.C. (MCAM) and enrich themselves. Defendants dispute this account.

On October 8, 2021, finding that the defendants repeatedly lied during discovery and concealed and destroyed evidence, the Court entered an Order granting UMMC's motion for default judgment. *See UMMC v. Sullivan*, No. 3:19-CV-459-CWR-LGI, 2021 WL 4713242 (S.D. Miss. Oct. 8, 2021). Defendants timely moved to set aside the default judgment. Docket Nos. 283, 285, 289, and 291. On February 1, 2022, the Court issued an Order denying the motions to set aside the default judgments. Docket No. 331. The Order also set a briefing schedule for the defendants' motion for summary judgment as to both damages and the merits of UMMC's claim, which the plaintiffs had filed on November 16, 2021. Docket No. 303.

Briefing on the defendants' motion for summary judgment concluded on March 15, 2022. The defendants subsequently filed a motion for leave to reopen discovery for a limited purpose on April 1, 2022. Docket No. 352. UMMC opposes this motion. *See* Docket No. 353.

**II.     Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a summary judgment motion is made and properly supported, the non-movant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nomovant's case." *Cuadra v. Houston Independent School Dist.*, 626 F.3d 808, 821 (5th Cir. 2010) (quotation marks and citation omitted); *see also Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

A genuine dispute is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if its resolution could affect the ultimate disposition of the case. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,* 482 F.3d 408, 411 (5th Cir. 2007). The nonmovant seeking to demonstrate a genuine issue of material fact is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Id.* at 1533.

The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013). "In reviewing the evidence, the court must 'refrain from making credibility determinations or weighing the evidence.'" *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). If after doing so, no evidence exists that allows reasonable inferences supporting the nonmoving party's position, then summary judgment must be granted. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).

**III.   Discussion**

In their motion for summary judgment, the defendants request that the Court "dismiss UMMC's damages claims in their entirety based on it misappropriation allegations under the DTSA." Docket No. 304 at 38.[1] The March 2022 Order in this case is instructive. There, the Court clarified that:

---

[1] The defendants also argue that "UMMC's conspiracy-to-misappropriate claim fails," and request summary judgment on this claim as well. Docket No. 304 at 13. UMMC filed an unopposed motion to dismiss its conspiracy claim, Count V of its complaint, on December 10, 2021. Docket No. 326. The Court granted this motion via a Text-Only Order on December 13, 2021. The defendants' request as to this claim is therefore moot.

3

> [T]he only remaining issue for trial is the amount of damages. *See TLS Mgt. & Mktg. Serv., LLC v. Mardis Fin. Servs., Inc.*, No. 2:14-CV-881-CWR-LRA, 2018 WL 3673090, at *8 (S.D. Miss. Jan. 29, 2018) (entering a default judgment, and then afterward, setting a trial on damages). Testimony, opinions, and arguments that do not relate to this calculation, including putative justifications for misappropriation, are irrelevant. Because of the defendants' conduct, liability is established. The question is no longer "what happened." Entry and affirmance of the default judgment established what happened—the defendants misappropriated trade secrets from UMMC in violation of the DTSA. Thus, the sole remaining issue is how much harm resulted from defendants' misappropriation.

Docket No. 332 at 6. This analysis holds true here. Indeed, "[a] default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019) (citing *United States ex rel. M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). Accordingly, the Court will not consider defendants' arguments regarding the merits of this case. The only relevant inquiry here is whether the defendants are entitled to summary judgment as to damages.

The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. Under the statute, "'trade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information . . . whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and
(B) the information derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information

*Id.* § 1839(3). In relevant part, the statute defines "'misappropriation'" as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired

4

by improper means." *Id.* § 1839(5)(A). Further, "'improper means' . . . includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy . . . ." *Id.* § 1839(6)(A).

### A.     Summary judgment on UMMC's misappropriation claims

The defendants raise several arguments in support of their contention that UMMC's claim for damages under the DTSA fails as a matter of law. Two bear particular consideration.[2] First, the defendants contend that "UMMC has no legally sufficient evidence that the alleged misappropriation—rather than other factors—caused UMMC's alleged damages." Docket No. 304 at 16. This argument retains its force notwithstanding the undisturbed default judgment, the defendants argue, because UMMC still must "prove a 'nexus between the misappropriation and UMMC's damages' in order to recover damages under the DTSA." Docket No. 340 at 2 (citing Docket No. 332 at 6). Second, the defendants urge that "UMMC's damages calculation it is legally deficient because it goes far beyond the 'head start period' that marks the legal cut-off for misappropriation damages." *Id.*[3] The Court considers each line of argument in turn.

Start with evidence of causation. The defendants argue that to prevail on its claim of misappropriation, UMMC "must produce evidence that the customers or patients chose to forego business with the plaintiff because of the alleged misappropriation and not for other reasons." Docket No. 304 at 18. The defendants submit that UMMC fails to satisfy this burden. In support, the defendants point to evidence that "UMMC itself notified its hematology patients that Dr.

---

[2] In their memorandum, the defendants also urge the Court to exclude an expert report prepared by James A Koerber. Docket No. 304 at 25-26. The Court, however, denied the defendants' motion to exclude Koerber's report and testimony in an Order entered on February 1, 2022. *See* Docket No. 332. This argument is therefore moot.

[3] The defendants also argue that UMMC fails to allege a sufficient nexus to interstate commerce, such that the DTSA does not apply. *See* Docket Nos. 304 at 31-32 and 340 at 11-12. UMMC's complaint, however, sufficiently pled a connection between interstate commerce and the defendants' misappropriation. *See* Docket No.1 at 49, ¶ 200. Thus, the undisturbed default judgments establish a connection to interstate commerce sufficient to support UMMC's misappropriation claim under the DTSA.

Sullivan would be leaving UMMC and provided his contact information at MCAM," Docket No. 304 at 20; that, as of November 16, 2021, "50 of the alleged unjust-enrichment patients have signed affidavits confirming that the alleged misappropriation had nothing to do with their decision to seek care at MCAM," *id.* at 20-21; that UMMC fails to offer evidence "that the alleged harm or enrichment would not have occurred absent the alleged misconduct," *id.* at 22; and finally, that UMMC fails to provide "legally sufficient proof that the misappropriation caused the alleged harm in the first place," *id.* at 23.

UMMC responds by offering evidence that Dr. Sullivan's business plan displayed "his expected yearly profits of $5 million from dispensing hemophilia medicine to former UMMC patients whom he solicited while still employed by UMMC and whose information he was in the process of compiling and stealing from UMMC." Docket No. 334 at 8 (citing Docket No. 1-28 at 14). UMMC further emphasizes places in the record that demonstrate the defendants' reliance on the patient list "to solicit patients and to write prescriptions for those patients that Dr. Sullivan's pharmacy would fill." *Id.* at 10. Moreover, UMMC points to Dr. Sullivan's failure to produce text messages "for the period of July 1, 2016, through August 7, 2016, which was the first month of MCAM's operations" as a fact that "undoubtedly bolster[s]" the defendants' claims that no solicitation occurred. *Id.* at 11 n.10

UMMC meets its evidentiary burden. The patient information at issue constitutes a trade secret under the DTSA. *See* Docket No. 317-1 at 4. As discussed in a case highlighted by the defendants, courts consistently distinguish between a physician's right "to announce a new affiliation, even to trade secret clients of a former employer," and the unlawful "misappropriation" of that information to "solicit customers." *Total Care Physicians, P.A. v. O'Hara*, No. Civ. A. 99C-11-201-JRS, 2002 WL 31667901, at *8 (Del. Super. Ct. Oct. 29, 2002) (internal quotation and

6

citation omitted) (collecting cases). UMMC provides sufficient evidence to raise a triable issue of fact whether the defendants' use of the patient list surpassed lawful patient notification and veered into unlawful solicitation. A jury must resolve this issue.

Next, the defendants argue that they are not liable under the DTSA as a matter of law "because Defendants' use of a patient list to notify patients of Dr. Sullivan's departure from UMMC does not constitute unlawful misappropriation under the DTSA." Docket No. 304 at 31. UMMC contests this account, citing to text messages that it alleges demonstrate solicitation, not notification, of Dr. Sullivan's patients at UMMC. *See* Docket No. 334 at 10 (citing Docket Nos. 79-8 at 6-7 and 308 at 17-28). As above, the record on this point reveals triable issues of fact. Accordingly, this matter shall proceed before the jury.

### B. Determination of the "head start" period

Onto the damages period. The defendants argue that the five-year period for which UMMC seeks unjust enrichment damages exceeds the "head start" period for the defendants' alleged misappropriation. *See* Docket No. 304 at 10, 13, 38. Rather, the defendants urge that the Court limit the damages period to after September 27, 2016, when MCAM gained uView access."[4] *Id.* at 38. In the alternative, the defendants ask that the Court limit damages to after MCAM received consent to access the records of the Alleged Unjust Enrichment Patients," the dates on which each of these patients authorized release of their UMMC records to MCAM. *Id.*

UMMC responds that "the so-called 'head start defense' is not applicable to this case." Docket No. 334 at 2. It argues that "[t]he List has never lost its secrecy." *Id.* at 14. Further, UMMC contends that the defendants' subsequent creation of a uView in September 2016 does not cut off the damages period, as the defendants "could not lawfully access any specific patient's medical

---

[4] uView is an online system that medical professionals use to store, view, and share patient records.

7

information without obtaining a signed medical record release from the patient." *Id.* at 17. Since the defendants "obtained those signed authorizations by first using the List to solicit the patients to the clinic and away from UMMC," UMMC argues, "[t]his eliminates an application of the head start defense based on having a uView account." *Id.*

The DTSA provides that "the term 'improper means' does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6)(B). In interpreting this provision, both UMMC and the defendants cite to the Restatement (Third) of Unfair Competition § 45, Comment (h). In relevant part, this comment states that "[m]onetary relief based on the defendant's use of the information after the loss of secrecy is therefore appropriate only to the extent necessary to remedy a head start or other unfair advantage attributable to the defendant's prior access to the information." Restatement (Third) of Unfair Competition § 45, Comment (h). UMMC also points to Comment (f), which states that "[t]he plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits." Restatement (Third) of Unfair Competition § 45, Comment (f).

Considered alongside one another, both the DTSA and the Restatement demonstrate that determination of the appropriate damages period is a highly fact-intensive inquiry. A review of the record reveals that UMMC provides sufficient evidence to create a genuine issue of fact as to the applicability of the head start defense. A jury must decide the applicable damages period. Summary judgment on this point is therefore inappropriate.

    **C.    Motion to reopen discovery for a limited purpose**

In addition to their motion for summary judgment, the defendants also filed a motion to reopen discovery for a limited purpose due to the departure of Joshua Lynn from his firm, Whitley Penn, and the abatement of his work as a testifying expert. *See* Docket No. 352 at 2. Accordingly, the defendants ask the Court "to reopen discovery for the limited purposes of reinstating Mr. [Justin] Blok"—an individual already disclosed as one of defendants' experts, albeit a nontestifying expert—"as the expert who will testify at the trial of this matter and allowing Plaintiff to depose Mr. Blok again if it so wishes." *Id.* The defendants emphasize that granting their motion will not prejudice UMMC, as "Mr. Blok's opinions and methodologies are identical to Mr. Lynn's" and "Mr. Blok has already endorsed and defended Mr. Lynn's opinions in his deposition on September 23, 2021." *Id.* at 3. Moreover, the defendants stress that if UMMC wishes to amend its line of questioning in light of this substitution, it can "depose Mr. Blok *again*." *Id.* at 3 (emphasis added). This is a reasonable gesture. They also underscore, very charitably, that "Mr. Blok is willing to testify in Jackson rather than Houston where he was previously deposed and will not bill Plaintiff for his time related to any re-deposition." *Id.*

Inexplicably, UMMC opposes this motion on several grounds. These arguments boil down to UMMC's contention that it will suffer prejudice if the Court grants the defendants' motion.

The Court will grant the defendants' motion. Substitution of Mr. Blok for Mr. Lynn does not amount to, as UMMC claims, "extraordinary relief." Docket No. 354 at 13. Rather, good cause exists here. The defendants' (1) explanation for the failure to ask for leave prior to the close of discovery, (2) the importance of Mr. Blok's testimony, (3) the lack of prejudice to UMMC in granting leave to reopen discovery for this limited purpose, and (4) the availability of a continuance to cure such (very limited) prejudice counsel in favor of granting the motion. *See S&W Enterprise,*

*L.L.C. v. SouthTrustBank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). Thus, the Court shall reopen discovery to enable UMMC to depose Mr. Blok, and Mr. Blok may testify on the defendants' behalf at trial.

**IV.    Conclusion**

The defendants' motion for summary judgment [Docket No. 303] is denied, and their motion for leave to reopen discovery for a limited purpose [Docket No. 352] is granted. If UMMC wishes to depose Mr. Blok, it shall do so within 30 days of this Order.  However, should UMMC choose to re-depose Blok, because he has been deposed already, Blok is not precluded from billing the plaintiff for his time related to any re-deposition. In addition, the parties also should agree on a procedure, time, and location (Houston or Jackson) for the deposition. The parties shall contact the Court to schedule a time for a jury trial on damages.

**SO ORDERED**, this the 4th day of May, 2022.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE